## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA as subrogee of 30 Knotter Drive Corporation d/b/a Avventura Bakery & Deli | : | CIVIL ACTION |
| Plaintiff | : | JURY TRIAL DEMANDED |
| v. | | |
| TECHTRONIC INDUSTRIES, NORTH AMERICA, INC, TTI CONSUMER POWER TOOLS, INC., ONE WORLD TECHNOLOGIES, INC., RYOBI TECHNOLOGIES, INC. Defendants | : | OCTOBER 11, 2023 |

## **COMPLAINT**

### NATURE OF ACTION

1. This is a civil action for damages brought pursuant to Connecticut's Product Liability Act, C.G.S. § 52-572m, et seq., This action seeks compensatory damages and attorney's fees.

### JURISDICTION AND VENUE

2. This Court has subject matter over this matter pursuant to 28 U.S.C. §§ 1332 (a)(1) because this matter is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3. Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because this is the district in which the cause of action arose.

### PARTIES

4. The Plaintiff, Citizens Insurance Company of America [hereinafter "CICA"], is a

1

corporation duly organized and existing under the laws of the State of Michigan with a principal place of business located at 440 Lincoln Street, Worcester, MA 01653.

5. At all times relevant hereto, CICA was in business of selling insurance products and was authorized to issue insurance policies in the State of Connecticut.

6. At all times relevant hereto, CICA's subrogor, 30 Knotter Drive Corporation d/b/a Avventura Bakery & Deli [hereinafter "Avventura" or "CICA's subrogor"], is a corporation duly organized and existing under the laws of the State of Connecticut with a principal place of business located at 30 Knotter Drive, Southington, CT 06849.

7. The Defendant, Techtronic Industries North America, Inc. [hereinafter "Techtronic"] is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 450 East Las Olas Boulevard, Suite 1500, Fort Lauderdale, FL 33301.

8. At all times relevant hereto, Techtronic was engaged in the business of designing, engineering, manufacturing, assembling, importing, distributing, selling, supplying and/or placing into the steam of commerce power tools, including, but not limited to, leaf blowers, within the State of Connecticut.

9. The Defendant, TTI Consumer Power Tools, Inc. [hereinafter "TTI"] is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 100 Innovation Way, Anderson, SC 29621.

10. At all times relevant hereto, TTI was engaged in the business of designing, engineering, manufacturing, assembling, importing, distributing, selling, supplying and/or placing into the steam of commerce power tools, including, but not limited to, leaf

blowers, within the State of Connecticut.

11. The Defendant, One World Technologies, Inc. [hereinafter "One World"] is a corporation duly organized and existing under the laws of the State of Florida with a principal place of business at 417 Park Boulevard North, Venice, FL 34285.

12. At all times relevant hereto, One World was engaged in the business of designing, engineering, manufacturing, assembling, importing, distributing, selling, supplying and/or placing into the steam of commerce power tools, including, but not limited to, leaf blowers, within the State of Connecticut.

13. The Defendant, Ryobi Technologies, Inc. [hereinafter "Ryobi"] is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business at 100 Innovation Way, Anderson, SC 29621.

14. At all times relevant hereto, Ryobi was engaged in the business of designing, engineering, manufacturing, assembling, importing, distributing, selling, supplying and/or placing into the steam of commerce power tools, including, but not limited to, leaf blowers, within the State of Connecticut.

15. Tectronic, TTI, One World, and Ryobi shall collectively be referred to hereinafter as "the Defendants".

16. At all times relevant hereto, Avventura owned and operated a restaurant and/or eatery business located at 30 Knotter Drive, Southington, CT [hereinafter the "Property"].

17. At all times relevant hereto, Avventura possessed a leasehold interest in the Property.

18. At all times relevant hereto, Avventura had an insurable interest in the Property as well as the improvements, betterments, fixtures, business personal property, and contents contained therein.

19. At all times relevant hereto, pursuant to Policy No.: OBE-D520547-03, CICA insured Avventura providing commercial insurance coverage for, among other things, the Property and the improvements, betterments, fixtures, business personal property, and contents contained therein [hereinafter the "CICA Policy" or the "Policy"].

20. At all times relevant hereto, Avventura owned a Ryobi brand leaf blower which was powered by a lithium battery and a battery charger [collectively hereinafter the "Ryobi Product"].

21. At all times relevant hereto, Avventura kept and stored the Ryobi Product at the Property.

22. The Ryobi Product was designed, engineered, manufactured, assembled, constructed, fabricated, imported, distributed, sold, supplied and/or otherwise placed into the stream of commerce by the Defendants and, thus, the Defendants are product sellers under the Connecticut Product Liability Act, C.G.S. §52-572m(a).

23. By placing the said Ryobi Product on the market for sale for consumer use, the Defendants represented that the product would safely operate and perform the uses for which it was intended and that, in all respects, the Ryobi Product was of merchantable quality.

24. At the time the Ryobi Product was designed, engineered, manufactured, assembled, constructed, fabricated, imported, distributed, sold, supplied and/or

otherwise placed into the stream of commerce by the Defendants, it was in a defective condition, which rendered the Ryobi Product unreasonably dangerous.

25. The unreasonably dangerous and defective condition of the Ryobi Product existed at the time it left the care, custody, and control of the Defendants.

26. The Ryobi Product was not misused or altered in any way from the condition it was in at the time it left the care, custody, and control of the Defendants.

27. On or about November 8, 2021, a fire occurred at the Property [hereinafter the "Fire"].

28. The Fire was caused by the defective condition and catastrophic failure of the Ryobi Product' battery.

29. The Fire directly and proximately caused severe and substantial damage to the Property and improvements, betterments, fixtures, business personal property, and contents contained therein.

30. After the Fire, Avventura made an insurance claim to CICA seeking benefits under the CICA Policy for their resulting damages and losses.

31. CICA, in accordance with the terms and conditions of the CICA Policy, honored the claim and made indemnity payments to, or on behalf of, Avventura in the amount of Five Hundred Two Thousand One Hundred Eighty-Six Dollars and Ninety-Eight Cents ($502,186.98).

32. As a result of the aforesaid indemnity payments, and pursuant to the terms of the CICA Policy, common law principles of equitable subrogation, and/or operation of law, CICA is legally, contractually and/or equitably subrogated to the rights, claims, remedies

and causes of action possessed by Avventura against the Defendants resulting and/or arising from the Fire.

33. At all times relevant hereto, the Defendants acted by and through their respective owners, managers, members, principals, officers, representatives, employees, contractors, independent contractors, subcontractors, workmen, duly authorized agents and/or affiliates, who, at all times relevant hereto, acted within the scope of their employment, agency and/or authority.

34. The Defendants had a duty to design, engineer, manufacture, assemble, fabricate, import, distribute, sell, supply and/or otherwise place into the stream of commerce the Ryobi Product free from defective conditions which were unreasonably dangerous to users, consumers, and/or possessors of its product.

35. The Defendants designed, engineered, manufactured, assembled, fabricated, imported, distributed, sold, supplied and/or otherwise placed into the stream of commerce the Ryobi Product in a defective condition and failed to warn of said defect.

36. The Ryobi Product was designed, engineered, manufactured, assembled, fabricated, imported, distributed, sold, supplied and/or otherwise placed into the stream of commerce in substantially the same dangerously defective condition that it was in when it left the Defendants' possession and/or control.

37. The Ryobi Product was unreasonably dangerous and unsafe for its intended use by reason of the defects that existed when the Defendants placed the product into the stream of commerce and prior to the time the defects caused damage to the Property and the improvements, betterments, fixtures, business personal property, and contents

contained therein.

38.   At all times relevant hereto, the Defendants breached Connecticut's Product Liability Act, C.G.S. §52-572m, et seq., and caused the Fire in one or more of the following ways:

a.   Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling the Ryobi Product in an unreasonably dangerous and defective condition in that it could not be used without unreasonable risk of causing a fire;

b.   Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling, the subject Ryobi Product in a manner that allowed for its battery to cause a fire;

c.   Failing to provide adequate safeguards, safety features and/or safety mechanisms within the Ryobi Product to prevent a fire;

d.   Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling an unreasonably dangerous and defective product that could not be used for its intended purpose without unreasonable risk of harm;

e.   Designing, manufacturing, assembling and fabricating the Ryobi Product in a way so as to be unable to regulate the battery cells conditions;

f.   Failing to design, manufacture, assemble, import, distribute and/or sell a properly functioning and defect-free product which, after reasonable and foreseeable use, malfunctioned and/or catastrophically failed;

g.   Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling the Ryobi Product that the Defendants knew or reasonably should have known, was designed, manufactured, assembled and/or fabricated defectively and subjected

the user of same to an unreasonable risk of harm;

h. Failing to exercise reasonable care in the design, manufacture, assembly, fabrication and/or selection of the Ryobi Products' battery and component parts;

i. Designing, manufacturing, assembling, fabricating, importing, distributing, and/or selling the Ryobi Product in a condition that was unsafe for all reasonably foreseeable uses;

j. Designing, manufacturing, assembling, fabricating, importing, distributing, and/or selling the Ryobi Product in a condition that was not merchantable or fit for the purpose for which such products are ordinarily and foreseeably used;

k. Designing, manufacturing, assembling, fabricating, importing, distributing, and/or selling a product that caught fire for no apparent reason;

l. Designing, manufacturing, assembling and/or fabricating the Ryobi Product in such a manner that permitted its battery to overheat, short circuit, and/or catastrophically fail resulting in a fire;

m. Designing, manufacturing, assembling, fabricating, importing, distributing, and/or selling the Ryobi Product which was not free of material defects;

n. Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling the Ryobi Product with a dangerous battery;

o. Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling the Ryobi Product without proper testing of its battery and/or electrical components;

p. Failing to adequately warn consumers of the possible hazards associated with

the Ryobi Product and its battery;

q. Designing, manufacturing, assembling and/or fabricating a defective battery and/or charging system for the Ryobi Product;

r. Causing and/or allowing the defective Ryobi Product to be placed in the stream of commerce;

s. Failing to recall the Ryobi Product and/or adequately warn that it presented a fire hazard;

t. Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling the Ryobi Product with defective and dangerous lithium batteries and/or electrical components which it knew, or should have known, posed the risk of fire; and

u. Designing, manufacturing, assembling, fabricating, importing, distributing and/or selling the Ryobi Product with improper and/or unsafe lithium batteries and/or electrical components.

39. The Defendants' liability producing acts, omissions, and conduct, as set forth above and for which they are liable pursuant to C.G.S. §52-572m, et seq., were the actual, direct, and proximate cause of the Fire.

40. The Defendants' liability producing acts, omissions, and conduct, as set forth above and for which they are liable pursuant to C.G.S. §52-572m, et seq., were the actual, direct, and proximate cause of the property damage and other incidental and consequential damages, losses, and expenses sustained by Avventura.

41. As a direct and proximate result of the Defendants' conduct for which they are liable pursuant to C.G.S. §52-572m, et seq., Avventura sustained substantial damage to

their real and/or personal property and incurred other incidental and consequential damages and losses in the amount of Five Hundred Two Thousand One Hundred Eighty-Six Dollars and Ninety-Eight Cents ($502,186.98), for which CICA, pursuant to the CICA Policy, made indemnity payments to, or on behalf of, Avventura for its damages and losses, and now seeks recovery of its indemnity payments from the Defendants.

42.  The Defendants are liable to CICA for the damages sustained because of the Fire.

WHEREFORE, CICA claims:

a.  Direct, compensatory damages, including extra expenses;

b.  Pre-judgment and post-judgment interest;

c.  Costs;

d.  Attorney's fees; and

e.  Such other relief as the Court deems just and proper.

>PLAINTIFF
>CITIZENS INSURANCE COMPANY OF AMERICA as subrogee of 30 Knotter Drive Corporation d/b/a Avventura Bakery & Deli
>
>By: /s/ Catherine L. Creager
>Catherine L. Creager, Esq.
>Coles, Baldwin, Kaiser & Creager, LLC
>1 Eliot Place, Third Floor
>Fairfield, CT  06824
>Phone: 203-319-0800
>Email:  ccreager@cbklaw.net
>Juris No. ct23645